MOREHOUSE v. SHEPARD.

1. BROKERS — SERVICES RENDERED — COMMISSIONS — VALUE —
DAMAGES.

Under a contract to pay a farmer well if he sold the farm
belonging to defendants, his neighbors, for whom the
plaintiff later found a purchaser, the measure of his com-
pensation was the fair value of plaintiff's services, not
the customary commission of a broker for obtaining a
buyer of the farm; although the testimony showing the
usual rates of brokers was competent as evidence of value
and might properly be considered by the jury, in deter-
mining what his services were worth.

2. SAME—EVIDENCE.

Where the jury, in an action of assumpsit for services
rendered by a farmer in selling a farm, returned a verdict
for less than the amount of commission claimed by the
plaintiff, but defendants did not offer to prove that the
services performed were worth a less amount than the
plaintiff recovered, judgment should not be reversed,
although the court had, at the trial, indicated that the
measure of damages that plaintiff urged was the correct
measure.

Error to Van Buren; Des Voignes, J. Submitted
October 13, 1914. (Docket No. 93.) Decided Decem-
ber 19, 1914. Rehearing denied April 28, 1915.

Assumpsit by Frank D. Morehouse against Horace T. Shepard and another for services performed. Judgment for plaintiff. Defendants bring error. Affirmed.

*Thomas J. Cavanaugh,* for appellants.

*David Anderson,* for appellee.

OSTRANDER, J.  Plaintiff, a farmer, claims that the defendants, also farmers, and neighbors of plaintiff, desired to sell their farm, and said to him, each of them, in substance, "If you can sell it, I will pay you for it," "I will pay you, and pay you well, for selling the farm;" that he undertook to sell it.  He claims, further, that he found and produced a person who bought the farm and paid for it the sum of $9,000, and that he should be paid as a commission 5 per cent. on this sum.  He declared upon the common counts in assumpsit, and gave as particulars of his demand the following:

"To commission on sale of real estate, $9,000
   at 5 per cent........................$450 00
   "Said commission to be at the usual rate at Paw Paw, Mich., and said 5 per cent. being said rate as claimed by plaintiff."

Defendants denied making any contract with plaintiff, and denied that plaintiff sold or found a purchaser for the farm on their account, and asserted that plaintiff's interest and conduct with respect to the sale arose out of the fact that he wished his brother-in-law, the purchaser, to locate near him.  Included in this was a claim that plaintiff, in talking with the intending purchaser, depreciated the value of the farm, calling attention to its *run-down* condition as affecting the price which should be paid for it.  Issue having been joined and the cause tried, a verdict was returned in plaintiff's favor for $250, and judgment was entered accordingly.

The issues were simple, were plainly for a jury, and, while a considerable number of exceptions were taken and made the foundation for an assignment of errors, we think they are without merit and, with a single exception, that they require no discussion. Plaintiff introduced testimony tending to prove the defendants' offer and his efforts pursuant thereto, known to defendants, to find a purchaser for the farm. That the farm was sold for $9,000 to a person produced by plaintiff is not disputed. As to the value of his services, plaintiff showed, over objection and exception, the usual commission charged and received by real estate agents and brokers in Paw Paw, and the court instructed the jury that if they reached the question of damages, they should, in determining the amount of them, "be governed by the usual compensation to be paid in Paw Paw for services of this kind —Paw Paw and vicinity." Error is assigned upon this instruction. In this connection and a subject of assigned error, the court said:

"It is no objection to plaintiff's right to recover that he has not regularly been in the business of real estate agent. Any person, no matter what his business, has the right to accept employment as agent for another in the sale of real estate. If defendants in fact employed Mr. Morehouse as their agent in the matter claimed by him, they would be as much bound to pay him as if they had made the same contract with a person whose only business was to act as a real estate agent."

Concerning this, appellants say in their brief, in part:

"If the plaintiff was at the time engaged in the real estate business, there would be no doubt but the defendants would be obliged to take notice of a custom existing among real estate brokers, but that is not the question with which we are dealing. The plaintiff was not engaged in the real estate business. Then the contract, as related by the plaintiff himself, would, it

seems, negative any intent on the part of the defendant to pay a commission, or any intent on the part of the plaintiff to ask a commission such as persons engaged in the real estate business would expect.

"The parties were farmers, neighbors as it were, and, admitting the making of the contract in the language of the plaintiff, can it be said as a matter of law that the defendant meant more, or that the plaintiff expected more, than to be paid well for the time expended in producing a customer?

"We believe the proper way to measure plaintiff's compensation would have been for him to show the amount of time spent in endeavoring to and in procuring a customer, and then to show the value of those services."

Plaintiff did show, rather generally, what he had done, in his effort to prove that he was the efficient cause of making the sale.

We are of opinion that counsel for appellants is right in his contention to this extent: That upon the measure of damages the question was, What was the fair value of the services rendered by the plaintiff? In determining the fair value of the services, it was not error to consider what real estate men in the neighborhood customarily charged, but it was error to make the customary charge of real estate men the governing factor. It is not unusual for a neighbor to perform for a neighbor, for hire, special services out of the line and scope of his usual employment. A woman will sometimes, with skill, nurse her neighbor who is sick, or her neighbor's child, with the mutual understanding that she shall be well paid for what she does. In such a case, the usual wages of a trained nurse ought not to be the measure of her pay, for various obvious reasons, one of which is that the parties did not contract with reference to any such standard of wages.

Can it be said that the error was not prejudicial? Presumptively it was prejudicial. The verdict indi-

cates that the jury considered that reasonable pay for plaintiff's services was a sum less than 5 per cent. of the selling price of the farm. In the face of the court's instruction, they returned a verdict for $200 less than the instruction called for. Defendants introduced no testimony upon the subject. They say in the brief that because the court, in ruling that testimony of the usual commission was competent, said:

"I am afraid that any other measure of damages than that suggested by counsel for the plaintiff would lead us into a field of exploration that would never énd. Either he is right upon that proposition or he has no standing in court"—

defendants were thereby precluded from offering any testimony as to the value of the services of the plaintiff, except the testimony of witnesses concerning the prevailing custom among real estate brokers. It is probable that the court would have excluded any testimony offered by defendants upon the subject of the reasonable value of plaintiff's services. But counsel should have offered, if in good faith he could have done so, to prove that they were worth some sum less than plaintiff claimed. If he had, and has, no testimony tending to prove, the contract being established, that the services were reasonably worth less than $250, there ought to be no new trial.

The judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.